UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FIROZ PATEL, | : | Case No. 3:25-CV-877 (SVN) |
| *Petitioner,* | : | |
| | : | |
| v. | : | |
| | : | |
| FLOWERS, Warden, FCI Danbury, | : | |
| *Respondent*. | : | November 10, 2025 |

**RULING ON PETITION FOR HABEAS CORPUS RELIEF**

Sarala V. Nagala, United States District Judge

*Pro se* Petitioner Firoz Patel brings a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the Bureau of Prisons' ("BOP") application of Earned Time Credits ("ETCs") under the First Step Act ("FSA"). Pet., ECF No. 1 at 2. For the reasons set forth below, the petition for writ of habeas corpus is **DISMISSED**.

**I.   BACKGROUND**

Petitioner was sentenced in the United States District Court for the District of Columbia to 36 months' imprisonment on November 10, 2020. Breece Decl., ECF No. 10-1 ¶ 5. This sentence consisted of two concurrent terms of imprisonment resulting from convictions for conspiracy to commit crimes against the United States and conspiracy to launder monetary instruments. *Id.* ¶¶ 5–6. Petitioner completed these concurrent sentences on April 14, 2023. *Id.* ¶ 7. Petitioner was rearrested on April 27, 2023, and sentenced on February 6, 2025, to 41 months' imprisonment for obstruction of an official proceeding. *Id.* ¶¶ 8–9. Petitioner began serving his second federal sentence on February 6, 2025, the date it was imposed. *Id.* ¶ 10. The BOP designated Petitioner to serve this sentence at FCI Danbury in Connecticut, *id.* ¶ 22, but Petitioner did not immediately arrive there after sentencing.

1

Petitioner began serving his sentence in the custody of the U.S. Marshals Service. *See id.* ¶ 23. Petitioner was first housed at the Truesdale Adult Detention Center and the DC DOC-Central Detention Facility from February 6, 2025, to February 13, 2025, while in the custody of the U.S. Marshals Service. *Id.* Between February 13, 2025, and March 26, 2025, still in the custody of the U.S. Marshals Service, Petitioner was housed at the Federal Detention Center in Philadelphia, Pennsylvania ("FDC Philadelphia") and the Federal Correctional Institution in Lewisburg, Pennsylvania ("FCI Lewisburg"). *Id.* ¶ 25.

On March 26, 2025, Petitioner entered BOP custody at FCI Danbury. *Id.* ¶¶ 22, 25. Petitioner originally began earning ETCs after he completed his risk and needs assessment at FCI Danbury on May 5, 2025. *See id.* at 5 n.7. Petitioner's projected release date after good conduct credits are applied is March 23, 2026. *Id.* ¶ 11. But Petitioner may be released as early as December 23, 2025, if he also earns available ETCs. Resp., ECF No. 10 at 5 n.1.

Petitioner filed his habeas petition on June 2, 2025, asserting that the BOP refused to award him ETCs from February 6, 2025 (his sentencing date) to May 5, 2025 (the date on which he completed his risk and needs assessment). *See* Pet. Memo, ECF No. 1-1 at 2. After Respondent received the habeas petition, the BOP elected to begin Petitioner's time credit calculation on the date of his arrival to FCI Danbury (March 26, 2025) because the delay in completing his risk and needs assessment was not his fault. Breece Decl. at 5 n.7. Despite awarding Petitioner partial relief, Respondent now urges the Court to (1) dismiss the habeas petition because Petitioner failed to exhaust his administrative remedies and to (2) deny the habeas petition because Petitioner is not entitled to credits prior to March 26, 2025, when he arrived at FCI Danbury and, according to Respondent, completed no programming that would qualify for time credit. *See id.* at 6.

## II.  LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, § 2241 petitions are appropriately used to challenge FSA time credit calculations. *See Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (considering a challenge to FSA time credit calculation made in § 2241 petition). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## III.  DISCUSSION

Respondent maintains that the habeas petition should be dismissed because "Petitioner made no attempt whatsoever to resolve his claims at FCI Danbury or elsewhere within BOP's Administrative Remedy Program" and that the habeas petition should be denied on the merits because "Petitioner has received all FSA time credits to which he is entitled." Resp., ECF No. 10 at 1, 5–6. The Court agrees that the claims made in the petition are unexhausted, and thus dismisses the petition without reaching Respondent's remaining argument.

### A.  Exhaustion

The Court acknowledges that the Second Circuit has not decided the question of whether the Prison Litigation Reform Act's ("PLRA") exhaustion requirement applies to § 2241 actions. *See Atiyas v. Stover*, No. 23-CV-1132 (VDO), 2024 WL 343029, at *2 (D. Conn. Jan. 30, 2024)

(collecting cases). This Court has previously held that the exhaustion requirements for § 2241 petitions are judicial, not statutory. *See Cardoza v. Pullen*, No. 3:22-CV-591 (SVN), 2022 WL 3212408, at *4–5 (D. Conn. Aug. 9, 2022). Until the Second Circuit resolves the issue, the Court abides by its holding in *Cardoza* that a § 2241 petitioner need not satisfy the PLRA's exhaustion requirements, but must satisfy a judicial exhaustion requirement. *See Carmona*, 243 F.3d at 634. "[T]he distinction between the two exhaustion requirements can be 'pivotal,' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (internal quotation and citations omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). To properly exhaust administrative remedies under the judicially imposed exhaustion requirement, a federal habeas petitioner must comply with the four-step Administrative Remedy Program ("the Program") established by the BOP. *See Atiyas*, 2024 WL 343029, at *2 (describing the four steps that must be taken before filing a § 2241 petition).

Under the Program, an inmate must first attempt informal resolution with prison staff by submitting a BP-8 form. 28 C.F.R. § 542.13(a). If no resolution is reached, he must next initiate a formal request to the warden by submitting a BP-9 form. 28 C.F.R. § 542.14(a). He must then direct any appeal to the appropriate regional director by submitting a BP-10 form within twenty calendar days of the warden's decision. 28 C.F.R. § 542.15(a). Finally, he must further appeal to the BOP General Counsel by submitting a BP-11 form within thirty calendar days of when the regional director signed the response. *Id.*; *see also Donato v. Pullen*, No. 3:22-cv-640 (JAM),

4

2023 WL 1967340, at *1 (D. Conn. Feb. 13, 2023) (explaining the BOP exhaustion procedures). "[A]n inmate's claim is not considered fully exhausted until it is considered by the BOP General Counsel[.]" *Emery v. Pullen*, No. 3:22-CV-1003 (SVN), 2023 WL 348114, at *5 (D. Conn. Jan. 20, 2023) (citing *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020)). And "[i]n section 2241 actions, the burden of demonstrating exhaustion of administrative remedies is on the petitioner." *Paulino v. Flowers*, No. 3:24-CV-1569 (VAB), 2025 WL 297388, at *1 (D. Conn. Jan. 24, 2025).

Here, there is no dispute that Petitioner failed to exhaust his administrative remedies before filing his habeas petition. BOP records show that Petitioner failed to take any steps to seek informal resolution or written grievance forms. *See* Resp. Ex. O, ECF No. 10-1 at 94; Breece Dec., ECF No. 10-1 ¶ 45 (stating that BOP records show that "Petitioner has never filed any requests for administrative remedy or administrative appeals regarding FSA time credits; rather, his only Request for Administrative Remedy concerned a request for prior custody credit for time spent in the custody of immigration officials.").

Petitioner argues that his failure to exhaust should be excused, because attempting to exhaust administrative remedies would be futile. Pet. Memo., ECF No. 1-1 at 2. Because § 2241's exhaustion requirement is judicially created, "a court has discretion to excuse the administrative exhaustion requirement for federal prisoners." *Donato*, 2023 WL 1967340, at *4. The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (quoting *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir. 1996)); *Anderson v. Williams*, No. 3:15-

5

CV-1364 (VAB), 2017 WL 855795, at *7 (D. Conn. Mar. 3, 2017) (applying the four bases identified in *Beharry* to a § 2241 petition).

Petitioner invokes the second and third bases here by arguing that "administrative exhaustion would be futile because the BOP's actions are allegedly due to its national policy and because a showing of irreparable harm exists here." Pet. Memo., ECF No. 1-1 at 2. The Court disagrees.

"There is a high threshold for a finding of futility." *Lallave v. Martinez*, 609 F. Supp. 3d 164, 180 (E.D.N.Y. 2022); *see also Beharry*, 329 F.3d at 62 ("That [petitioner's] argument would likely have failed is not tantamount to stating that it would have been futile to raise it[.]"). This threshold is not satisfied simply because "an agency has previously rejected a certain claim." *Lallave*, 609 F. Supp. 3d at 180 (collecting cases). Plaintiff's mere allegation of futility due to BOP's alleged national policy does not clear the bar. *See Diamond v. Loc. 807 Lab. Mgmt. Pension Fund*, 595 F. App'x 22, 25 (2d Cir. 2014) (summary order) (holding that plaintiff's "conclusory allegations . . . fail to sufficiently allege futility"). This is particularly true where BOP retroactively awarded ETCs to Petitioner after he filed his habeas petition, *see* Resp., ECF No. 10 at 6, notwithstanding any alleged national policy that may be in place.

The Court also disagrees with Petitioner's contention that the potential for irreparable harm exists here. Pet. Memo., ECF No. 1-1 at 2. Petitioner does not explain the irreparable harm that would result if he were made to exhaust administrative remedies. In the absence of such an explanation, the Court will infer that the "irreparable harm" to which Petitioner refers is the possibility of serving excess imprisonment. But, as it stands now, the earliest Petitioner may be released is December 23, 2025. Resp., ECF No. 10 at 5 n.1. Even if the Court awarded Petitioner ETCs from his February 6, 2025, sentencing date to his March 26, 2025, arrival at FCI Danbury

(the only period in dispute at this point), Petitioner may only receive sixteen days of credit for these forty-eight days of imprisonment. *See* 18 U.S.C. § 3632(d)(4)(A)(i) (stating that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities"). Thus, Petitioner's expected release date would only advance to December 7, 2025, even if the Court awarded all the relief Petitioner seeks. *See* Pet., ECF No. 1 at 8. If Petitioner would not be released until December 7, 2025, at the earliest, the Court cannot conclude that irreparable harm would result by enforcing the exhaustion requirement. *Lallave,* 609 F. Supp.3d at 181.

Although Petitioner claims that exhausting administrative remedies could take six months—beyond his expected release date—that argument assumes certain facts.[1] First, it assumes that Petitioner first learned he was not properly receiving time credits on June 2, 2025, the date that he filed the present petition, and thus could not have filed an administrative remedy request at any earlier point in time—but he does not allege as much. Second, it assumes that the BOP would seek all possible extensions to respond to Petitioner's grievances, which the Court has no evidence would actually occur. Third, it assumes Petitioner would take the full allotted time to appeal at each level, which he would be disincentivized to do if he genuinely sought to exhaust available remedies as quickly as possible in order to achieve resolution of his claim and, ultimately, file suit.

---

[1] By the Court's calculations, assuming generously that Petitioner filed the present petition on the day he learned he was not properly receiving credit, he could have sought an informal resolution and filed an administrative remedy request that day, as well. 28 C.F.R. § 542.14(a). The Warden is required to respond within twenty days, which can be extended for up to twenty additional days; if no response is received in that timeframe, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, by July 12, 2025, if Petitioner had not received a response, he could have appealed to the Northeast Regional Director of the BOP within twenty days, by August 1, 2025. *See* 28 C.F.R. § 542.15(a). The Regional Director has thirty days to respond, which can be extended to sixty days. 28 C.F.R. § 542.18. Thus, if Petitioner did not receive a response by September 30, 2025, he could have then appealed to the BOP's Office of General Counsel by October 30, 2025. 28 C.F.R. § 542.15(a). That office would be required to respond by December 9, 2025, unless it sought the permitted extension of up to twenty days, until December 29, 2025.

Moreover, even if Petitioner *anticipates* an earlier release than December 7, 2025, ETCs, like good conduct credit, may be lost during Petitioner's term of imprisonment. *See* 28 C.F.R. § 523.43 (entitled "Loss of FSA Time Credits"); 28 C.F.R. § 541.3 (listing loss of FSA time credits as an available sanction for prohibited acts). Because these credits may be lost during Petitioner's term of imprisonment, the FSA does not permit BOP to reduce a prisoner's sentence until the number of ETCs is "equal to the remainder of the prisoner's imposed term of imprisonment[.]" 18 U.S.C. § 3624(g)(1)(A). Only then can ETCs be applied because they "would no longer be subject to loss for future prohibited acts." *Clark v. Jamison*, No. 3:23-CV-455 (MPS), 2023 WL 7300582, at *3 (D. Conn. Nov. 6, 2023). Because the BOP has not yet applied Petitioner's ETCs, *see* Resp., ECF No. 10 at 2 (stating that "Petitioner's good conduct time release date is March 23, 2026, approximately eight months away, so he does not yet meet the requirement set forth in 18 U.S.C. § 3624(g)(1)(A)" (citing Breece Decl., ECF No. 10-1 ¶ 37, Resp. Ex. A, ECF No. 10-1 at 11–17)), the Court cannot conclude there is a risk of irreparable harm. *See*, *e.g.*, *Martin v. Puzio*, No. 3:24-CV-01600 (VAB), 2025 WL 1678472, at *3 (D. Conn. June 13, 2025) (concluding that habeas petitioner was not at risk of suffering irreparable harm where the BOP had not yet applied the petitioner's ETCs).

Lastly, "even if [Petitioner's] accumulated ETCs entitled him to an earlier release, courts have widely recognized that continued imprisonment does not constitute irreparable harm." *Id.* (collecting cases from this circuit, including *Donato*, 2023 WL 1967340, at *4 (concluding that "if continued imprisonment during the pendency of the administrative remedy process were enough—standing alone—to establish irreparable harm, then courts would have to excuse the administrative exhaustion requirement in all cases where prisoners seek to be released from imprisonment. That makes no sense.")). Accordingly, regardless of when Petitioner anticipates

8

he may be released, his impending release does not excuse his failure to exhaustion administrative remedies.

For these reasons, the Court grants Respondent's motion to dismiss the petition without prejudice because Petitioner failed to exhaust his administrative remedies before filing suit. *See id.* at 4 (dismissing § 2241 petition for failure to exhaust administrative remedies through the procedures (citing, *inter alia*, *Donato*, 2023 WL 1967340, at *5) (granting motion to dismiss on non-exhaustion grounds)).

In light of this conclusion, the Court does not reach Respondent's remaining argument for denial of the petition on the merits—that Petitioner is not entitled to time credits for "productive activities" in which he claims to have engaged between February 6, 2025, and March 26, 2025, including religious services.[2]

### IV. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus (ECF No. 1) is **DISMISSED** without prejudice. The Clerk is directed to close this case.

**SO ORDERED** at Hartford, Connecticut, this 10th day of November, 2025.

                                                                /s/ Sarala V. Nagala
                                                                SARALA V. NAGALA
                                                                UNITED STATES DISTRICT JUDGE

---

[2] Petitioner filed a motion to file a sur-reply brief, to respond to arguments made in Respondent's reply brief. *See* Mot. for Sur-Reply, ECF No. 17. The Court denies that motion as moot, given that it does not address exhaustion of remedies—the issue on which the Court has decided to dismiss the petition.